IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ALLEGIANT HEALTHCARE EAST, LLC,
7255 E. Broadway Road
Mesa, AZ 85208

and

ALLEGIANT HEALTHCARE WEST, LLC,
3130 E. Broadway Road
Mesa, AZ 85204

Plaintiffs,

vs.

THE UNITED STATES SMALL BUSINESS ADMINISTRATION and KELLY LOEFFLER in her official capacity as Administrator of the United States Small Business Administration,
409 3rd Street, SW
Washington, DC 20416

Defendants.

Civil Action No. 26-cv-3740

**COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**

Plaintiffs Allegiant Healthcare East, LLC ("Allegiant East") and Allegiant Healthcare West, LLC ("Allegiant West") (collectively, "Plaintiffs") allege and state as follows:

**INTRODUCTION**

1. This action seeks judicial review of the Small Business Administration's ("SBA") and its Administrator's arbitrary, capricious, and legally erroneous denial of loan forgiveness to Allegiant East and Allegiant West of their respective Paycheck Protection Program ("PPP") loans obtained pursuant to the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (2020).

2. Plaintiffs, both skilled nursing facilities substantially affected by the COVID-19 pandemic, properly obtained PPP Second Draw Loans to address the resulting economic hardship.

3. Over the course of roughly nine months, the SBA reversed course twice on the basis for denying forgiveness—first citing a 21-entity affiliate group with 1,681 employees (later withdrawn after Plaintiffs showed most of those entities were no longer affiliated), then citing a shortfall in gross-receipts reduction (also withdrawn), and finally, in the Final Loan Review Decisions issued December 3, 2025 (generally referred to herein as the "Operative FLRDs"), citing an affiliate-group employee count of 433—a figure the SBA reached only by using calendar-year 2019 payroll data instead of the 12-month period preceding the loan application.

4. In guidance published in its *Paycheck Protection Program Loans: Frequently Asked Questions (FAQs)*, U.S. Small Bus. Admin., at 6-7, the SBA, in response to Question 14 ("FAQ 14"), expressly permits borrowers to calculate their employee count using "the average number of employees per pay period in the 12 completed calendar months prior to the date of the loan application," not calendar-year 2019 or 2020 data.[1]

5. Using that 12-month pre-application period, as FAQ 14 directs, Plaintiffs' affiliate group averaged 284.66 employees—well under the 300-employee ceiling for Second Draw eligibility.

6. The SBA Office of Hearings and Appeals ("OHA") nonetheless affirmed the Operative FLRDs based on guidance in a separate document titled "Second Draw Paycheck Protection Program (PPP) Loans: How to Calculate Revenue Reduction and Maximum Loan

[1] A copy of the SBA's FAQs that include FAQ 14 is attached **as Exhibit 1** to the Complaint.

Amounts Including What Documentation to Provide."[2] OHA asserted that Q&A 12 included in this guidance document ("Q&A 12"), displaced FAQ 14 for purposes of calculating a Second Draw borrower's employee count and confined borrowers to 2019 or 2020 data.

7. That reasoning cannot be reconciled with the guidance itself: Q&A 12 addresses only how to calculate payroll costs for determining a Second Draw loan amount—it never mentions the employee-count method that was explicitly addressed in FAQ 14.

8. Because Plaintiffs satisfied the 300-employee standard under the SBA's own, explicit and controlling guidance published by the SBA, they were eligible for loan forgiveness. OHA's decisions affirming denial are arbitrary, capricious, an abuse of discretion, and contrary to law.

9. Plaintiffs bring this action to vacate the Operative FLRDs, obtain a declaration confirming the proper method for calculating employee count under the Second Draw program, and secure an order directing the SBA to approve forgiveness of Plaintiffs' Second Draw loans in full.

## PARTIES

10. Plaintiff Allegiant East is an Arizona limited liability company which operates a skilled nursing facility in Mesa, Arizona.

11. Plaintiff Allegiant West is an Arizona limited liability company which operates a skilled nursing facility in Mesa, Arizona.

12. Defendant SBA is a federal agency created and governed by 15 U.S.C. § 633, et seq. The CARES Act authorized the SBA to administer the PPP.

---

[2] A copy *Second Draw Paycheck Protection Program (PPP) Loans: How to Calculate Revenue Reduction and Maximum Loan Amounts Including What Documentation to Provide,* which includes Q&A 12, is attached **as Exhibit 2** to the Complaint.

13. Defendant Kelly Loeffler is the Administrator of the SBA and is being sued only in her official capacity. 15 U.S.C. § 634(b).

## VENUE AND JURISDICTION

14. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 2201. This Court also has authority to review agency action under 5 U.S.C. § 702.

15. Under 13 C.F.R. § 134.1211(g), the SBA's "[f]inal decisions may be appealed to the appropriate Federal district court."

16. The SBA's decisions in this matter became final on May 28, 2026, 30 days after the OHA's April 28, 2026 Reconsidered Initial Decisions were issued affirming the SBA's loan review decisions which found Plaintiffs ineligible for PPP loan forgiveness.

17. Plaintiffs have exhausted all administrative remedies.

18. The SBA's issuance of the Reconsidered Initial Decisions constitutes final agency action that is judicially reviewable under the APA. 5 U.S.C. §§ 704, 706.

19. Venue is proper in the United States District Court for the District of Columbia under 28 U.S.C. § 1391(e) and 5 U.S.C. § 703 because defendant SBA resides and is headquartered in Washington, D.C.

20. This Court may grant declaratory relief, injunctive relief, and other appropriate relief pursuant to 28 U.S.C. §§ 2201-02 and 5 U.S.C. §§ 702-06.

## FACTS

21. Congress passed the CARES Act on March 27, 2020, to combat the economic disruption caused by the COVID-19 pandemic. Pub. L. No. 116-136, 134 Stat. 281 (2020).

22. The SBA has recognized that the purpose of the CARES Act was to assist small businesses impacted by the pandemic. 86 Fed. Reg. 51589-90 (Sept. 16, 2021) (stating that the

CARES Act was created "to provide relief to America's small businesses expeditiously" at a time when "many small businesses nationwide have experienced and continue to experience economic hardship" and "a dramatic decrease in economic activity" related to the COVID-19 pandemic).

23. As part of the CARES Act, Congress enacted the PPP, a temporary loan program to provide emergency financial relief to small businesses experiencing financial hardship during the pandemic. Pub L. No. 116-136, § 1102, 134 Stat. 281 (2020); 15 U.S.C. § 636.

24. The PPP was incorporated into section 7(a) of the Small Business Act and is administered by the SBA.

25. Eligible recipients were authorized to use loan proceeds for payroll costs, rent, utilities, and other operating expenses. 15 U.S.C. § 636(a)(36)(F).

26. The original PPP loans authorized under the CARES Act are commonly referred to as "First Draw" loans.

27. In late 2020, the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act approved of a second round of funding under the PPP, and such loans are commonly referred to as "Second Draw" loans. Pub. L. 116-260, 134 Stat. 1182 (2020).

28. To be considered eligible for a First Draw PPP loan, a business was required to (1) employ an average of no more than 500 employees; (2) meet certain industry-specific size standards established by the SBA; or (3) satisfy an alternative size standard based on Tangible Net Worth and Average Net Income. 15 U.S.C. § 636(a)(36)(D)(i); 15 U.S.C. § 632(a)(5).

29. To be considered eligible for a Second Draw PPP loan, a business was required to (1) have previously received a First Draw PPP loan and used the full amount of those funds for eligible expenses; (2) employ an average of no more than 300 employees; and (3) demonstrate at

least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020. 15 U.S.C. § 636(a)(37)(O); 15 U.S.C. § 636(a)(37)(A)(iv)(I).

30. To determine an applicant's average number of employees, PPP regulations required borrowers to add their average annual employees with the average employees of any affiliated entity. 13 C.F.R. § 121.301(f); Business Loan Program Changes; Paycheck Protection Program, 85 Fed. Reg. 20,811, 20,812-15 (Apr. 15, 2020).

31. Borrowers were also required to include the gross receipts of their affiliates when determining whether they met the required 25% reduction in gross receipts to meet eligibility standards for Second Draw PPP loans. 13 C.F.R. § 121.301(f); Business Loan Program Changes; Paycheck Protection Program Second Draw Loans, 86 Fed. Reg. 3712 (Jan. 12, 2021).

32. The SBA made clear that, to demonstrate the requisite number of employees, a borrower may use the average number of employees in the 12 months prior to the date of loan application. Paycheck Protection Program Loans: Frequently Asked Questions (FAQs), U.S. Small Bus. Admin., at ¶ 14.

33. The CARES Act also provided that "[a]n eligible recipient" of a PPP loan is also eligible for forgiveness of that loan. 15 U.S.C. § 636m(b); 15 U.S.C. § 636(a)(37)(J)(iii).

**PLAINTIFFS' SECOND DRAW PPP LOANS**

34. Allegiant East and Allegiant West are part of the same affiliate group that also includes two other entities—Allegiant Healthcare AL, LLC and Allegiant Healthcare IL, LLC.

35. Skilled nursing facilities, like Plaintiffs, were especially vulnerable to hardships related to the COVID-19 pandemic due to their residents' advanced age, medical conditions, and close living quarters.

36. To combat the pandemic-related financial strain, Plaintiffs applied for and received First Draw PPP loans.

37. On March 24, 2021, Plaintiffs applied for Second Draw PPP loans through American Lending Center.

38. On March 26, 2021, Plaintiffs received approval for their respective Second Draw loans.

39. Allegiant East was approved for SBA Loan No. 9687688601 in the amount of $1,082,854.

40. Allegiant West was approved for SBA Loan No. 9877198608 in the amount of $2,000,000.

41. On January 12, 2024, Plaintiffs applied for forgiveness for their loans.

42. On January 30, 2024, American Lending Center approved Plaintiffs' respective loan forgiveness applications.

**THE SBA'S DOCUMENT REQUESTS AND REVIEW OF LOANS**

43. On February 12, 2024, the SBA notified American Lending Center that it was reviewing Allegiant East and Allegiant West's PPP loans.

44. As described in more detail below, the SBA then issued multiple requests for additional documentation to Allegiant East and West, eventually issuing three different Final Loan Review Decisions, each with a different rationale. This Complaint appeals the OHA's decision affirming the Operative FLRDs issued on December 3, 2025, to each of Allegiant East and West.

45. Between June 10, 2024 and November 1, 2024, the SBA issued five successive rounds of requests for production of documents and information to Allegiant East and Allegiant West, seeking, among other things, a list of commonly owned entities and affiliates, comprehensive

organizational charts, operating agreements (including for the 24 entities potentially affiliated with Plaintiffs), federal income tax returns, and evidence of the required 25% reduction in gross receipts. Plaintiffs timely responded to each request.

46. On March 20, 2025, the SBA issued its first Final Loan Review Decisions for both Allegiant East and Allegiant West, finding that the borrowers were ineligible for PPP Second Draw Loans because they, along with their affiliates exceeded the maximum number of allowable employees for Second Draw Loan applicants—300. The March 20, 2025 Final Loan Review Decisions are attached to the Complaint as **Exhibit 3**.

47. The March 20, 2025 Final Loan Review Decisions found that Plaintiffs were "one of 21 entities affiliated via ownership and management by principal Ariel Fein." The SBA concluded that this 21-entity affiliate group had a total employee count of 1,681, and therefore Plaintiffs were ineligible for their Second Draw Loans.

48. On April 16, 2025, Plaintiffs submitted additional information to the SBA which demonstrated that Mr. Fein released control of 18 entities the SBA alleged were affiliated with the borrowers on January 8, 2021.

49. In response to Plaintiffs' supplemental information regarding Mr. Fein's control of certain entities, the SBA withdrew and vacated the March 20, 2025 Final Loan Review Decisions.

50. On April 25, 2025, the SBA issued its Fifth Requests for Production of Documents and Information, stating that it was recommending full denial because Allegiant East and Allegiant West did not experience the requisite 25% reduction in gross receipts.

51. On June 2, 2025, Plaintiffs submitted additional information to the SBA to demonstrate eligibility.

52. On June 30, 2025, the SBA issued its ***second*** Final Loan Review Decisions for both Allegiant East and Allegiant West, finding that Plaintiffs were ineligible for PPP Second Draw Loans because they did not meet the requisite 25% reduction in gross receipts. The June 30, 2025 Final Loan Review Decisions are attached to the Complaint as **Exhibit 4**.

53. The June 30, 2025 Final Loan Review Decision sent to Allegiant West specifically conceded that "[t]he Borrower and affiliates total (268) number of employees was under the 300-employee limit for the second draw loan." Significantly, the SBA found that the affiliate group for Allegiant East and Allegiant West is the same group of four entities. *See* **Exhibit 4**.

54. Thus, the SBA's determination that the employee count for Allegiant West and its affiliates is below 300 employees, necessarily means that the employee count for Allegiant East and its affiliates is also below 300 employees, because the two entities have the same affiliates.

55. On July 30, 2025, Plaintiffs timely submitted individual appeals of the June 30, 2025 Final Loan Review Decisions to the OHA.

56. While Plaintiffs' appeals from the June 30, 2025 Final Loan Review Decisions were pending, the SBA issued the Operative FLRDs on December 3, 2025. The Operative FLRDs are attached as **Exhibit 5**.

57. The Operative FLRDs denied forgiveness on the grounds that "the borrowing business, together with its affiliates, did not meet the eligibility requirements of the Paycheck Protection Program by exceeding the Employee-based Size Standards for Second Draw Loans."

58. In the Operative FLRDs, the SBA calculated the employee count by relying on "the 2019 941 forms reporting an average of 258 employees for Allegiant Healthcare West, LLC, plus an average of 138 employees for Allegiant Healthcare East, LLC," and then combining those

figures with the employees of two other affiliates to reach "a total employee count across affiliates of 433."

59. On December 31, 2025, Plaintiffs submitted a request to the SBA to withdraw the Operative FLRDs, as they were procedurally improper because there were already Final Loan Review Decisions issued and on appeal at OHA. Plaintiffs did not receive a response to this request.

60. Plaintiffs then submitted individual requests to the OHA to dismiss the Operative FLRDs, arguing that they were procedurally and substantively improper.

61. On January 22, 2026, the OHA issued an Order dismissing Allegiant West's then-existing appeal of the previous June 30, 2025 Final Loan Review Decision and authorizing Allegiant West to file a new appeal no later than February 6, 2026, to challenge the Operative FLRD for Allegiant West. In this Order, the OHA specifically found that "[t]he record clearly reflects that SBA withdrew the June 30, 2025, [Final Loan Review Decision] and subsequently issued a revised [Final Loan Review Decision] on December 3, 2025."

62. On January 22, 2026, the OHA issued an Order authorizing Allegiant East to continue the then-existing appeal proceedings based on the Operative FLRD for Allegiant East, rather than requiring the dismissal of the then-existing appeal and the filing of a new proceeding.

63. As reflected in the OHA's January 22, 2026 Orders, the June 30, 2025 Final Loan Review Decisions were withdrawn when the SBA issued the Operative FLRDs on December 3, 2025. As a result, only the Operative FLRDs are at issue in this action.

**ALLEGIANT EAST'S OHA APPEAL PROCEEDINGS**

64. On February 2, 2026, Allegiant East timely filed a new appeal petition challenging the Operative FLRD of December 3, 2025, arguing that the SBA erred in calculating the affiliate

group's employee count by (1) using 2019 calendar year 941 forms and (2) by relying on the total number of employees who received compensation during a quarter instead of the average number of employees each month.[3]

65. The SBA issued guidance answering the question of what time period a borrower should use to calculate its number of employees: "[b]orrowers may elect to use SBA's usual calculation: the average number of employees per pay period in the 12 completed calendar months prior to the date of the loan application…" *See* FAQ 14.

66. The 941s from the 12-month period prior to the date of Allegiant East's loan application demonstrate that the relevant affiliate group had a monthly average of 284.66 employees.

67. Accordingly, the SBA erred in concluding that Allegiant East was ineligible for its Second Draw loan because it exceeded the maximum number of allowable employees.

68. Although the OHA ordered the SBA to file an amended Administrative Record no later than February 13, 2026, the SBA failed to file the Administrative Record.

69. On February 23, 2026, Allegiant East filed an Objection to the Administrative Record and Request for Summary Judgment, arguing that the SBA committed a clear error and the SBA did not provide any evidence to refute that showing.

70. On February 26, 2026, the OHA issued an Order requiring the SBA to respond to Allegiant East's Objection and Motion for Summary Judgment.

71. On March 2, 2026, the SBA filed the Administrative Record.

[3] Because it determined that the 941 forms from 2019 were the correct forms from which to calculate the employee count, OHA never reached the issue of whether the SBA used the wrong counts within the 941s.

72. The Administrative Record must include all "non-privileged, relevant documents that SBA considered in making its final loan review decision or that were before SBA at the time of the final loan review decision." 13 C.F.R. § 134.1207(b).

73. The SBA's Administrative Record included no reference to the Operative FLRD of December 3, 2025, let alone any documentation which demonstrates the reasoning supporting the Operative FLRD.

74. On March 11, 2026, Allegiant East filed an Objection to the Administrative Record, arguing that the SBA failed to include any documentation supporting the SBA's conclusion that Allegiant East's affiliate group exceeded the 300-employee maximum.

75. On March 12, 2026, the OHA issued an Order partially sustaining Allegiant East's Objection to the Administrative Record, and requiring the SBA to supplement the Administrative Record to include the Operative FLRD of December 3, 2025.

76. On March 20, 2026, the SBA supplemented the Administrative Record to include the Operative FLRD of December 3, 2025.

77. The Administrative Record was still devoid of any documentation supporting the SBA's conclusion that the employee count exceeded 300.

78. The SBA did not file a response to Allegiant East's Appeal Petition.

79. On April 1, 2026, the OHA issued its Initial Decision Denying Allegiant East's appeal and affirming the Operative FLRD of December 3, 2025.

80. The Initial Decision concluded that notwithstanding the plain language of FAQ 14, the SBA prohibited borrowers from using the 12-month period prior to their application to calculate their average number of employees.

81. Specifically, the OHA concluded that "FAQ 14 is a general rule written primarily for First Draw PPP loan eligibility that runs contrary to a specific rule, Q&A 12."

**ALLEGIANT WEST'S OHA APPEAL PROCEEDINGS**

82. On February 6, 2026, Allegiant West timely filed a new appeal petition challenging the Operative FLRD of December 3, 2025, arguing that the SBA erred in calculating the affiliate group's employee count (1) by using 2019 calendar year 941 forms and (2) by relying on the total number of employees who received compensation during a quarter instead of the average number of employees each month.

83. The SBA issued guidance answering the question of what time-period a borrower should use to calculate its number of employees: "[b]orrowers may elect to use SBA's usual calculation: the average number of employees per pay period in the 12 completed calendar months prior to the date of the loan application…" FAQ 14.

84. The 941s from the 12-month period prior to the date of Allegiant West's loan application demonstrate that the relevant affiliate group had a monthly average of 284.66 employees.

85. Accordingly, the SBA erred in concluding that Allegiant West was ineligible for its Second Draw loan because it exceeded the maximum number of allowable employees.

86. On February 9, 2026, the OHA issued an Order setting out new deadlines for Allegiant West's appeal.

87. On March 2, 2026, the SBA filed the Administrative Record for Allegiant West's appeal.

88. Unlike the Administrative Record for Allegiant East, the record for Allegiant West did at least include the Operative FLRD from December 3, 2025, in which the SBA erroneously concluded that the affiliated group's employee count exceeded 300.

89. The record also showed that this calculation was incorrectly based on the 2019 Form 941s.

90. Although the record for Allegiant West includes 2019 Form 941s for only Allegiant West, the SBA clearly relied on the 2019 Form 941s for Allegiant East as well, because the Operative FLRD of December 3, 2025, includes the erroneous employee counts for both Allegiant West and Allegiant East based on the 2019 Form 941s.

91. The SBA did not file a response to Allegiant West's Appeal Petition.

92. On April 1, 2026, the OHA issued its Initial Decision Denying Allegiant West's appeal and affirming the Operative FLRD of December 3, 2025.

93. As with Allegiant East, the Initial Decision concluded that notwithstanding the plain language of FAQ 14, the SBA prohibited borrowers from using the 12 months prior to their application to calculate the relevant number of employees.

94. Specifically, the OHA concluded that "FAQ 14 is a general rule written primarily for First Draw PPP loan eligibility that runs contrary to a specific rule, Q&A 12."

## **OHA'S DECISIONS ARE ERRONEOUS**

95. OHA's decisions upholding the denial of forgiveness for both Allegiant East and West are arbitrary and capricious and clearly erroneous.

96. OHA's limitation of the guidance on how to calculate employee count in FAQ 14 to only first draw PPP loans has no basis in law, regulation, or any SBA guidance.

97. Nowhere in FAQ 14 does the SBA limit its application to First Draw loans.

98. Notably, FAQ 14 was revised on March 3, 2021, *after* the second draw loan program went into effect, yet the amended FAQ still did not limit its application to first draw loans. Had the SBA sought to limit the application of FAQ 14 solely to first draw loans it would have included that limitation in the March 3, 2021 revision.

99. OHA's assertion that FAQ 14 was written for the First Draw PPP loans was therefore clearly incorrect.

100. Q&A 12 addresses only whether a borrower may use "payroll costs from the precise 12-month period prior to the First Draw PPP loan" in determining its Second Draw PPP loan amount.

101. Q&A 12 is completely silent on the proper method to calculate a borrower's employee count. In fact, the very title of the document says nothing about employee count.

102. The OHA erroneously concluded that "[t]hrough issuance of revised FAQ 14 and Q&A 12, SBA eliminated a PPP borrower's ability to utilize a time period other than calendar years 2019 or 2020 to establish Second Draw PPP Loan Eligibility."

103. As the United States Supreme Court has stated, "the duty of an administrative agency is to follow its commands as written, not to supplant those commands with others it may prefer." *SAS Inst., Inc. v. Iancu*, 584 U.S. 357, 363 (2018).

104. The OHA's conclusion is directly contrary to the plain language of FAQ 14, which allows a borrower to "use the **SBA's usual calculation**: the average number of employees per pay period in the 12 completed calendar months prior to the date of the loan application" in determining its employee count. (emphasis added).

105. Additionally, the SBA erred in reading the Form 941s, mistakenly counting the number total employees paid during the quarter on page 1 of the form, instead of counting the actual number of monthly employees specified on page 2 of the form.

106. A Form 941 is a quarterly statement of deposits and filings for federal tax purposes. It includes the total taxable wages paid and taxes withheld for all employees during a fiscal quarter.

107. Page one of the form includes "Employee Count" which is the total number of employees paid that quarter. It does not reflect the number of employees in any given month.

108. Page two of the form includes the employee count for each month of the quarter. This is the most accurate count from which to calculate the number of employees that business had for PPP eligibility purposes.

109. The correct numbers from which to calculate the employee counts for all four of the affiliates at issue in this case are the monthly employee numbers on the Form 941s for Q2 2020, Q3 2020, Q4 2020, and Q1 2021 for each of the four affiliated entities.

110. Based on the correct information, the number of employees from this affiliate group is 285 employees—well under the 300-employee requirement for PPP eligibility.[4]

**OHA DENIES MOTIONS FOR RECONSIDERATION**

111. On April 9, 2026, Allegiant East and Allegiant West filed Petitions of Reconsideration of the OHA's Initial Decisions, arguing that the conclusion that a Borrower could not use employee counts from the year preceding its application was made in clear error.

112. On April 28, 2026, the OHA issued its Reconsideration Decisions denying Allegiant East's and West's petitions and affirming the April 1, 2026 Initial Decisions.

[4] The detailed calculation of these numbers is included in the appeal letters for Allegiant East and West attached to this Complaint as **Exhibit 6**.

113. The OHA upheld its Initial Decisions based upon the same error. In fact, apart from substituting the word "Appellant" for "Petitioner," the OHA copied the exact language from its Initial Decisions in analyzing Allegiant East's and West's Loan Eligibility and Forgiveness.

114. Allegiant East and West now seek judicial review of the SBA's erroneous forgiveness denial.

115. Allegiant East and West respectfully request that this Court reverse the OHA's decision and declare that Allegiant East and West are entitled to forgiveness of the entire PPP loans they received.

## COUNT I
## Agency Action Contrary to Law

116. Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

117. The OHA's April 1, 2026 and April 28, 2026 decisions constitute final agency decisions under 13 C.F.R. § 134.1211(g), and the APA provides that a reviewing court must "hold unlawful and set aside any agency action…found to be…arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A).

118. Under the CARES Act, applicants were eligible for Second Draw PPP loans if they employed no more than 300 employees.

119. The SBA issued guidance clearly allowing applicants to calculate their number of employees based on the 12-month period prior to their loan application.

120. Here, Allegiant East and Allegiant West, with their affiliate group, did not employ an average of more than 300 employees in the 12 months prior to their loan application.

121. The SBA's determination, as reflected in the Operative FLRDs of December 3, 2025, that Plaintiffs are ineligible for forgiveness because they did not meet the employee count

threshold has no basis in fact, is arbitrary and capricious, is an abuse of discretion, and is not in accordance with the law.

**COUNT II**
**Declaratory Judgment**

122. Plaintiffs incorporate by reference paragraphs 1 through 115 of this Complaint as if fully set forth herein.

123. There is an actual and existing controversy between the parties as to the correctness of the Operative FLRDs issued by the SBA on December 3, 2025.

124. Plaintiffs continue to suffer significant financial hardship as the result of SBA's repeated shifting of its rationale to deny forgiveness. Plaintiffs' repayment obligations were not delayed pending the SBA's three "final" decisions and Plaintiffs' subsequent appeals.

125. The controversy is of sufficient immediacy to warrant the issuance of a declaratory judgment.

126. A declaratory judgment will settle the controversy between the parties regarding their legal rights and obviate any future harm or uncertainty.

127. Plaintiffs are entitled to a declaratory judgment that they were entitled to use the 12 months prior to their loan applications to calculate the average employee counts and that Plaintiffs thus were eligible for the Second Draw loans they received.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Allegiant Healthcare East, LLC and Allegiant Healthcare West, LLC respectfully request that the Court grant judgment in their favor as follows:

1. An order vacating and setting aside the SBA's December 3, 2025 final decisions—the Operative FLRDs—as arbitrary, capricious, and contrary to law;

2. A declaration that Plaintiffs were entitled to use the 12-month period prior to their applications to calculate their average number of employees under applicable PPP regulations and SBA guidance;

3. A remand with instruction to the SBA to approve forgiveness of Plaintiffs' Second Draw loans;

4. Reimbursement to Plaintiffs of any sums repaid on any Second Draw loans, with interest;

5. Award Plaintiffs costs and reasonable attorney's fees to the extent permitted by law; and

6. Grant such other relief as this Court may deem just and proper.

Dated: October 26, 2026

Respectfully submitted,

/s/ *Erin K. Sullivan*

Erin K. Sullivan (D.C. Bar No. 984712)
**BRADLEY ARANT BOULT CUMMINGS, LLP**
1900 K Street, NW, Suite 800
Washington, D.C. 20006
202.719.8208 (telephone)
esullivan@bradley.com
*Counsel for Plaintiffs*
*Allegiant Healthcare East, LLC*
*Allegiant Healthcare West, LLC*